**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

    **Plaintiff/Respondent,**

vs.                                                          **CIVIL NO. 04-903 JP/WDS**
                                                                                **02CR598**

**JOSE CARLOS ARRAS,**

    **Defendant/Movant.**

**UNITED STATES' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
IN SUPPORT OF EVIDENTIARY HEARING ON
DEFENDANT'S MOTION TO VACATE, SET ASIDE OR CORRECT A SENTENCE
PURSUANT TO 28 U.S.C. § 2255
FILED ON AUGUST 9, 2004**

       The United States, through its counsel, DAVID C. IGLESIAS, United States Attorney, and BILL PFLUGRATH, Assistant United States Attorney, hereby offers the following Proposed Findings of Fact and Conclusions of Law.

PROPOSED FINDINGS OF FACT

**A. Procedural Facts**

       1.   On March 21, 2002, an arrest warrant was issued for **Jose Carlos Arras**, defendant/movant ("movant").

       2.   That same day, a Criminal Complaint [Doc. #1] was issued for movant and a co-defendant, Lorenzo Ruiz (not a party to this petition).

       3.   Movant was arrested on March 28, 2002 [Doc. # 26].

       4.   Mr. Peter Edwards, Assistant Federal Public Defender, was appointed as counsel for movant on March 29, 2002 [Doc #5].

       5.   A Detention Order was issued on March 29, 2002 [Doc. #4].

6.  The Grand Jury returned a two-count Indictment [Doc. # 10] against movant on April 17, 2002, alleging he conspired to import less than 50 kilograms of marijuana in violation of 21 U.S.C. § 963, and he possessed less than 50 kilograms of marijuana with the intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), and 846.

7.  The maximum statutory period of imprisonment movant faced as a result of this indictment was zero-to-five years.  See 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D).

8.  Movant was previously convicted of two drug smuggling offenses:  one in the State of Tennessee, and another in the U.S. Western District of Texas.  Movant was on conditions of supervised release on the federal case at the time of his arrest in this case.  These convictions qualified movant as a career offender (see U.S.S.G. § 4B1.1(a)), and permitted the United States to seek to enhance a conviction for Count 2 at its discretion under 18 U.S.C. § 851.  As a result, the maximum statutory period of imprisonment movant faced as a result of the indictment increased from zero-to-five years to five-to-ten years.   See 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D).

9.  On May 20, 2002, Edwards moved to withdraw as counsel [Doc. #24].

10.  The motion for Edwards to withdraw as counsel was granted on May 21, 2006 [Doc #25].

11.  On May 28, 2002, Mr. Anthony White, Esq., was appointed as counsel for movant [Doc. #27].

12.  On June 19, 2002, the Grand Jury returned a Superceding Indictment [Doc. #34].  The new indictment alleged the same two counts as the previous indictment but it increased the quantity to "100 kilograms or more of marijuana," which changed the penalty sub-section from § 841(b)(1)(D) to § 841(b)(1)(B).

13.  As a result of the Superceding Indictment, the statutory period of imprisonment was increased from zero-to-five years to five-to-forty years.

14. On August 13, 2002, the United States timely filed its enhancing information under 8 U.S.C. § 851 [Doc. # 71], which increased movant's statutory period of imprisonment from five-to-forty years to ten-years to life-in-prison as a result of his prior drug convictions.

15. On August 13, 2002, the jury was impaneled for trial.

16. A guilty verdict as to both defendants was rendered on August 16, 2002 Doc. ## 74-75].

17. Movant requested a new trial on August 23, 2002.

18. The motion for a new trial was denied on October 15, 2002. [Doc. # 89]

19. Movant was sentenced on November 4, 2002, as to both Count 1 and 2 to 262 months in the custody of the U.S. Bureau of Prisons to run concurrently, eight years of supervised release, and a $200 Special Penalty Assessment. [Doc. # 93].

20. White moved to withdraw as movant's attorney on November 7, 2002, [Doc. # 95], which was granted on November 21, 2002. [Doc. #96]

21. A final judgement as to movant was entered on December 6, 2002. [Doc. #99]

22. A Notice of Appeal was filed with the U.S. Court of Appeals for the Tenth Circuit by movant on December 10, 2002. [Doc. # 100]

23. The district court's decision was affirmed by the Court of Appeals on July 16, 2004 in United States v. Arras, 373 F.3d 1071 (10th Cir. 2004). [Doc. # 108] ( A writ of certiorari was not sought.)

24. A motion to vacate, set aside or correct a sentence pursuant to 28 U.S.C. § 2255 was timely filed by movant on August 9, 2004. [Doc. # 109]

25. Movant filed a motion to supplement his petition on October 12, 2004. [Doc. # 113]

26. A motion for a second supplement was filed October 19, 2004. [Doc. #114]

27. The Federal Public Defender, through Mr. Stephen McCue, was appointed as counsel for movant on March 23, 2006 [Doc. # 120], but that Office recused itself and moved to withdraw from representation. [Doc. # 121]

28. Mr. Armando Torres, Esq., was appointed as counsel on April 26, 2006 [Civ Doc. # 17].

## B. Substantive Facts

28. Edwards has been a member of the State Bar since 1997, he specializes in criminal defense, and he has served as counsel for hundreds of defendants.

29. Edwards met with movant five times from April 1, 2002 to May 20, 2002.

30. During that period, Edwards reviewed the case discovery, the elements of the offense, his criminal record, potential defenses and trial strategies, and likelihood of success.

31. A plea agreement was not tendered by the Government to Edwards for movant during the pendency of Edward's representation; however, the potentiality for a plea agreement in this case was discussed.

32. On May 8, 2002, Edwards reviewed movant's criminal history with him and its possible significance, the timing as to when the United States might seek to file an information to enhance movant's prior offense under 18 U.S.C. § 851, and the impact such an information would have on subsequent plea negotiations or later sentencing.

33. Edwards sought to withdraw from the case because of a conflict of interest that had developed between counsel and movant, specifically because counsel was discussing plea opportunities to a greater extent than movant desired.

34.  White has been a member of the State Bar since 1984, he specializes in criminal defense, and he has served as counsel for defense in approximately 1,000 cases.

35.  White spoke with Edwards in late-May 2002 to discuss the status of the case and prior counsel's assessment of the government 's proof against movant.

36.  Edwards told White via telephone and in person several times that movant had two previous drug-related convictions that would make movant a career offender under U.S. Sentencing Guidelines § 4B1.1 and thereby increase his criminal history, and that movant was subject to an 18 U.S.C. § 851 enhancement as to the statutory sentence.

37.  Movant admitted in his Reply to United States Response to Motion to Vacate, Set Aside or Correct a Sentence Filed February 25, 2005 [Doc. # 117 at 1] that "[Edwards] did mention to Movant the possibility of an enhanced sentence, however he also said that in order for that to happen, Movant would have to be notified by the Government about the enhancement before jury selection (citations omitted)."

38.  White received discovery provided to date by the United States from White.

39.  On or about June 6, 2002, White first consulted with movant (i.e., twelve days <u>before</u> the Superceding Indictment was returned).

40.  Movant told White that Edwards had previously explained the sentencing exposure movant faced if movant went to trial, and movant said he wanted to go to trial.

41.  On June 17, 2002, the United States tendered a plea agreement offer to movant that was open until July 31, 2002, in which it proposed movant plead guilty to Count 2 of the Superceding Indictment, and in exchange the United States would agree to:

   a.  Agree to a three-level reduction for acceptance of responsibility;

5

  b.  Not file an information enhancing movant with either prior conviction under 18 U.S.C. § 851.

  c.  Dismiss Count 1 at sentencing.

42.  White told movant about the Government's plea offer but movant did not wish to discuss it or its potential benefit to movant.

43.  Movant said he was not interested in the plea offer that had been offered.

44.  White did not update Edward's previous assessment of the impact of a possible enhancement under 18 U.S.C. § 851 on movant's period of imprisonment under the Superceding Indictment.

45.  White confirmed movant knew about the plea agreement offered, that movant was not interested in the plea through several conversations with movant, and movant was not interested in a plea.

46.  When White advised movant what the Government's witness might say, movant first mentioned that he might have some documents that would serve as either an alibi or as impeachment of the government's witness's expected testimony.

47.  The documents mentioned by movant were two traffic citations issued by Mexican Law Enforcement in Chihuahua City, Mexico.  One citation was issued on February 28, 2002, purportedly signed by movant.  The second was a traffic citation issued at 12:10 p.m. on March 1, 2002, purportedly signed by defendant.  <u>See</u> Petition for Habeas Corpus at 5.

48.  Movant advised White that movant's son had the documents and that he would provide White with them.

49.  In the afternoon of August 11, 2002, Sunday, White met with movant's son and received two foreign documents from him.

50.  White provided copies of the documents to the United States on August 12, 2002.

51. On August 13, 2002, the United States filed its information to enhance defendant's sentence under 18 U.S.C. § 851, if convicted. [Doc. #71]

52. Jury selection was conducted on August 13, 2002.

53. White associated with the Federal Public Defender's Office to better assess, determine means to authenticate and identify the documents provided by movant's son as either alibi evidence or impeachment evidence.

54. Trial began on August 14, 2002, and concluded the next day. See generally Trial Transcript (Tr.) 8/14/02 and 8/15/02.

55. White cross-examined the Government's main witness, Tammy Louise Nielsen who had transported the narcotics as an accomplice for movant, and White impeached her testimony about the weight of the marijuana involved, and was able to get her to admit she did not know what the weight involved was in any of the four loads. Tr. 8/14/06 at 128-29.

56. White cross-examined Agent Shaw and about the weight of the marijuana (Tr. 8/15/06 at 104-107) and he was able to get the agent to agree that "[i]f it was 40 pounds in that one load that the dog sniffed—assuming that she was giving you truthful information, 40 pounds on the other two loads, and then your 86 pounds [on the fourth load], that comes out to 206 pounds, doesn't it?" Id. at 107. After dividing by 2.2 to convert pounds into kilograms, the agent admitted that it was "a little over 93 kilos." Id. However, the Government argued that the loads were of equal weight of 86.5 pounds (39.3 kilograms). Therefore this admission by the agent must not have been credited as accurate by the jury, but it was, nonetheless, a tactical effort by defense to assist in decreasing movant's exposure.

57. Although Nielsen was arrested on March 1, 2002, she did not mention that date anywhere in her testimony. See id. at 60-123; contra Petition for Habeas Corpus at 5 (stating that "During Nielsen testimony, she maintained that on March 1,

7

2002, she met with Movant in Juarez, Mexico, which is located hundreds of miles away from Chihuahua City. . . ;" however, the date of arrest was introduced through other witnesses subsequent to Nielsen's testimony).

58. Nielsen stated she met with movant several times and spoke to him several times during the course of multiple narcotics transactions, and that she recognized movant uniquely as a man with three fingers on one hand and that he identified himself that way.  Tr. 8/14/06 at 69 (¶¶ 7-8 & 19-20).

59. White cross-examined Special Agent John Shaw, the witness who testified about the estimated weights in the other sales attributed to movant, which was used as relevant conduct to enhance movant's sentence.  Tr. 8/15/06 at 104-07.

60. White argued in closing that "nobody knows if there . . . was marijuana on the other so-called trips that [the Government's witness] made.  If so, how much?  If so, who it really belonged to."  Id. at 209.  He argued the weights in closing in saying:

> "Now, if you believe [Nielsen] a lot, or if you believe her a little, or if you believe her none, the amounts involved become crucial.  Because if you believe her just a little bit, the amounts are less.  She did say 40 pounds at one time.  She thought, she was told, she heard, she believed.  It was 40 pounds.  Whether Agent Shaw says [$]1,000 a pound, or $50 a pound, or whatever vol—dollar amounts he puts on this substance, he's just basing that upon things that he's heard, people he's talked to.  Because, obviously, he's not out there on the street, making personal investigations, purchasing marijuana, or he would have told you that.  That's speculation.  That [$]4,000 equals 80 pounds, [$]2,000 equals 40 pounds.  But she didn't cross the border, so —give her a discount or give her a bonus, whatever they want to do with that.  But if you believe her a little bit, look at these amounts real close.  Look at these amounts real close.  Maybe it is less than 100 kilograms."

Id. at 210.

61. White expected that movant would elect to testify and that he would be able to authenticate the documents through movant; however, upon the Government resting its case-in-chief, White advised the court that movant did not wish to testify.  See id. at 137 (¶ 23).

8

62. After having been advised of his right to testify, movant elected not to do so. See id. at 138 (¶ 12).

63. The two foreign documents proffered by movant were not introduced into evidence at trial or used for impeachment.

64. The jury was instructed by the court that an element of 21 U.S.C. §§ 952(A) and 960(A)(1) was "[t]hat the quantity of the substance was at least 100 kilograms [of marijuana]." Tr. 8/15/02 at 174.

65. The jury was instructed by the court that an element of 21 U.S.C. § 846 was that "[t]he overall scope of the conspiracy involved 100 kilograms or more of marijuana." Id. at 175.

66. The jury was instructed by the court that an element of 21 U.S.C. § 841(A)(1) was "[t]hat the quantity of the substance was at least 100 kilograms [of marijuana]." Id. at 177.

67. The court advised the jury that "if you determine unanimously that the government has not proved beyond a reasonable doubt that either of both of the conspiracies involve[d] 100 kilograms or more of marijuana, then you must consider whether the government has proven that the defendants are guilty of conspiracies to import and/or possess with intent to distribute a lesser amount of marijuana." Id. at 180.

68. The court further admonished the jury that they "are the sole judges of the credibility or believability of each witness, and the weight to be given to the witnesses' testimony." Id. at 184.

69. The court stated that the testimony of Tammy Louise Nielsen (the Government's main witness) as a former accomplice, "is always to be received with caution and weighed with great care. [The jury] should never convict a defendant on the unsupported testimony of an accomplice unless [they] believe that testimony beyond a reasonable doubt." Id. at 187. In addition, "The testimony of someone who is shown

9

to have used addictive drugs during the period of time about which [Nielsen] testified must also be examined and weighed by the jury with greater care and caution than the testimony of an ordinary witness." Id.

70. On August 16, 2006, the jury found movant "guilty of conspiring to import 100 kilograms or more of marijuana as charged in Count I of the [superceding] indictment[,]" and of "conspiring to possess with the intent to distribute 100 kilograms or more of marijuana as charged in Count II of the indictment." Tr. 8/16/06 at 2-3.

71. The jury was polled and they confirmed that was their verdict. Id. at 3-4.

72. On August 23, 2002, movant filed a motion for a new trial with the District Court [Doc. #77]. He alleged that his trial counsel was ineffective because he failed to attempt to authenticate and introduce into evidence two Mexican traffic citations which, he argued, could have been used to impeach Nielsen. See id. He also argued that the amount of drugs attributed to him was based on insufficient evidence. See id. at 3.

73. The District Court denied movant's motion for a new trial [Doc. ## 83, 89].

74. The District Court held that "defense counsel performed effectively and that the new evidence, if it had been considered by the jury, would not have changed the outcome of the case" [Doc. #89 at 3]. The Court also found the evidence was sufficient for a reasonable jury to infer that movant conspired to import and to possess with the intent to distribute the quantity of marijuana alleged in the indictment. Id.

75. On November 4, 2002, movant was sentenced to 262 months imprisonment, four years of supervised release, and was ordered to pay a $200 special penalty assessment.

76. Judgement was filed on December 5, 2002, and movant filed a timely notice of appeal on December 10, 2002 [See Docs. ## 99-100].

77. On May 15, 2003, movant filed his appeal with the United States Court of Appeals for the Tenth Circuit and put four issues forward for consideration (see United States v. Aaras, 373 F.3d 1071, 1072-77 (10th Cir. 2004):

(a) That the Government failed to prove the amount of marijuana involved in the conspiracy was 100 kilograms of marijuana or more.

(b) That Agent Shaw was not offered as an expert but permitted to proffer opinion evidence.

(c) That the jury instructions focusing on movant's culpability unduly the defense's argument that the Government's witness was shifting the blame from her boyfriend to movant.

(d) That counsel was ineffective, which the court declined to hear.

78. On July 14, 2004, movant's appeal was denied and the order of the district court affirmed.

PROPOSED CONCLUSIONS OF LAW

**A. Legal Conclusions**

1. To establish ineffective assistance of counsel, one must satisfy a two-part test. First, he must show that counsel's performance fell below an objective standard of reasonableness. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Second, he must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See id. at 694.

2. A reasonable probability is a probability sufficient to undermine the confidence in the outcome. See id.

3. Judicial scrutiny of counsel's performance is highly deferential; thus, one must overcome the presumption that the challenged action might be considered sound Judicial scrutiny of counsel's performance trial strategy. See id. at 689.

4. No case has been located that stands for the proposition that an attorney's failure to discuss the impact of an 18 U.S.C. § 851 enhancement is always per se prejudice, regardless of the circumstances or a defendant's understanding.

### B. Factual Conclusions

1. Habeas corpus venue is properly before this Court. See 28 U.S.C. § 2255.

2. Movant has timely filed his petition for Writ of Habeas Corpus. Id.

3. Movant properly asserts an ineffective assistance of counsel claim. See United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995).

4. However, Movant's claim that the court failed to determine individual findings for the amount of marijuana involved in the conspiracy is a re-characterization of his sufficiency of the evidence argument rejected by the Court of Appeals and therefore should be dismissed as having been fully and fairly litigated. See Arras, 373 F.3d at 1076; United States v. Warner, 23 F.3d 287, 291 (10th Cir. 1994) (on a petition to vacate sentence, district court may not consider issues that were heard and disposed of on direct appeal).

5. Movant was advised by Anthony White about a plea agreement by the United States and movant knowingly and voluntarily rejected that offer after having been made aware of the nature of the offense, the burden of proof upon the government, the likelihood of acquittal, and movant's prior criminal history.

6. Specifically, both prior counsel advised movant of the sentencing consequences that his two prior drug-related convictions might have upon any sentence, and movant understood the consequences of going to trial.

7. Movant was advised the Government would most likely file an information enhancing his offense just before the trial began and, once such a notice was filed, the effect would be to enhance the offense regardless of future proceedings.

8. Movant provided two foreign documents to White three days before the commencement of trial and after the deadline for a notice of an alibi defense had passed. Only the traffic citation issued on March 1, 2002, had relevance because it related to when Nielsen met with movant the last time before she was arrested; however, the date of that meeting and of her arrest did not come in through her testimony. Therefore, White would not have been able to perfect the value of impeachment without her committing to March 1 as a meeting date, which was ostensibly beyond the scope of direct examination. Even if permitted, admission of extrinsic evidence that movant had been cited the same day hundreds of miles away would not have been permitted (see Fed.R.Evid 608(b)), and White would had to have taken Nielsen's response as given.

9. The foreign documents were not authenticated as genuine or confirmed as pertaining to movant. White was not unmindful that the documents may have been fabricated in Mexico.

10. Movant could have testified about the documents, but his decision to exercise his right to not testify also precluded any likelihood of admitting the documents into evidence through his authentication.

11. Had the foreign documents been used for impeachment, the likelihood of casting doubt on the credibility of the witness had to be weighed against the impact on the jury, which was a decision well within the sound discretion of an attorney.

12. White's failure to advise movant specifically of his exposure to imprisonment under the superceding indictment fell below his standards of performance, but it cannot be said it fell below an objective standard given movant's understanding he was liable to be enhanced and his adamant desire to proceed to trial.

13. White did challenge the amount of marijuana involved in the conspiracy and invited the jury to not believe Nielsen and why. While White's efforts provide ineffective in convincing even one juror that less than 100 kilograms of marijuana were involved, as the Circuit Court noted, it was "[movant's] preoccupation with keeping up the tire pressure and his constant reminders to Ms. Nielsen, the fact that Ms. Nielsen was paid or promised the same amount for each trip commensurate with the risk involved, and the fact that the going rate for smuggling marijuana across the border was roughly equal to her payments, a reasonable jury could conclude that Ms. Nielsen was transporting about the same amount of marijuana each trip." Aaras, 373 F.3d at 1076. Therefore, while the Circuit Court considered movant's argument earlier from a sufficiency of evidence stand point, the recognition of the strength of the evidence also addresses counsel's performance as falling within a reasonable standard.

14. The weight of the marijuana involved in the superceding indictment was a specific factor that the jury had to find, and being specifically admonished that they were to be the sole judges of that fact, to weigh carefully the testimony of a prior accomplice who was a narcotic user at the time, and that they were permitted to find that a lesser amount was involved. Still, the jury unanimously agreed that movant's crime involved 100 kilograms or more of marijuana beyond a reasonable doubt.

15. The Court of Appeals affirmed the district court's decision with respect to the quantity of marijuana involved. In considering movant's argument, the Court said:

> "Although this is a close case, our review of the record convinces us that the evidence was sufficient to support defendants' convictions and that the jury's conclusion was not based on improper speculation or conjecture. Viewing the evidence together with the reasonable

>inferences to be drawn therefrom, in a light most favorable to the government, we cannot say that no rational juror could have found the essential elements of the crime beyond a reasonable doubt.  The jury's conclusion that the conspiracies in this case involved more than 100 kilograms of marijuana clearly flowed from logical and probabilistic reasoning."

Arras, 373 F.3d at 1074.

## CONCLUSION

For the reasons stated above, the United States argues:

      1.    Movant was advised of the sentencing consequences of a third drug-related conviction by his first counsel, Edwards, with respect to movant's initial indictment.  Movant was not advised on the increased consequences by his second counsel, White, with respect to movant's superceding indictment.  While such actions fell below the counsel's standards of performance, they did not fall below an objective standard of performance given movant knew he was liable to have an enhancing information filed against him prior to trial and his unwillingness to consider any plea offer.

      2.    Counsel failed to use the March 1, 2002, traffic citation to impeach Nelsen's testimony that she had met with movant in Juarez, Mexico, but—given due deference to defense counsel—the failure to use such a document was not unreasonable because:  (a) counsel doubted its authenticity; (b) Nielsen did not commit to meeting movant in Juarez specifically on March 1 in her direct testimony or on cross-examination; (c) Nielsen's unique means of identifying movant and her recollection of being with him in Juarez was strong; and (d) there were several other meetings and telephone calls with movant throughout the course of the trial such that impeachment on one date would not have undermined Nielsen's credibility more than efforts to show she was an accomplice cooperating with the Government and a drug user herself.

   3. Counsel was not ineffective in challenging the estimated amount of marijuana involved in the conspiracy, because he did challenge it and he obtained a jury instruction that would have permitted the jury to have found the conspiracy involved less than 100 kilograms.  The evidence was sufficient for the jury to have found beyond a reasonable doubt that more than 100 kilograms of marijuana was involved in the conspiracy.

   4. The allegation that the court failed to make individual findings that the marijuana exceeded 100 kilograms was previously litigated on direct appeal and rejected by the Court of Appeals.

   Therefore, the United States requests movant's petition be denied.

            Respectfully submitted,

            DAVID C. IGLESIAS
            United States Attorney

           by: */S/ Electronically filed*

            BILL PFLUGRATH
            Assistant United States Attorney

I hereby certify a copy of this motion
was sent to Counsel for Defendant.
*/S/ Electronically filed*
BILL PFLUGRATH
Assistant United States Attorney