IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**JOSE CARLOS ARRAS,**
          Plaintiff,

vs.                                         No. CIV 04-00903 MCA/WDS

**UNITED STATES OF AMERICA,**
          Defendant.

**PLAINTIFF'S PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW**

**COMES NOW** the Plaintiff, **JOSE CARLOS ARRAS,** by his attorney, Armando Torres and respectfully proposes the following Findings of Fact and Conclusions of Law.

**PROPOSED FINDINGS OF FACT**

    1.  The defendant incorporates by reference the proposed Procedural Facts as set forth in paragraphs 1 through 28 of the United States Proposed Findings of Fact and Conclusions of Law.

    2.  Mr. Peter Edwards, Assistant Federal Public Defender, reviewed the defendant's criminal history with him and advised him that the United States could file an information seeking to enhance movant's prior offense under 18 U.S.C. §851, however Edwards never advised the defendant as to how the enhancement would affect his sentence nor did he give the defendant an estimate as to a potential sentence that the defendant could be facing should he be convicted at trial.

1

3. While Movant was aware of a possible enhancement, neither of his attorneys explained the ramification of an enhancement and that his potential sentence would increase from five to forty years to ten to life in prison.

4. While Movant was aware of a possible enhancement, neither of his attorneys explained how the sentencing guidelines would be affected by the filing of the enhancement and the potential sentence that the movant would be facing.

5. On or about June 6, 2002, Anthony White, Esq., met and consulted with movant for the first time regarding his case.

6. Movant never told White that Edwards had explained the sentencing exposure movant faced if movant went to trial.

7. White told movant that they had a good case that was winnable at trial.

8. Although White may have received a plea offer from the Government, White never advised movant that a plea offer had been tendered to him by the Government.

9. Movant was never given the opportunity to discuss the potential plea agreement nor to compare the potential sentences he was facing, if he chose to go to trial versus taking the plea offered on June 17, 2002.

10. White never discussed the plea agreement tendered to movant so consequently, movant never rejected the offer nor did he tell White that he was not interested in the offer tendered by the Government on June 17, 2002.

11. White never advised movant of the impact of the enhancement, instead advising movant and his son, Jose Carlos Arras, III, that the potential sentence the defendant could receive

would be a sentence of five to ten years, with a likely sentence of ten years if movant went to trial.

12.   During the second day of trial White and Arras, III, met for lunch, and when Arras, III asked White, about the potential sentence, White again advised that it would be from five to ten years..  White further explained that if a defendant goes to trial he would get the maximum sentence of ten years..

13.   During that lunch meeting,  White never advised Arras III, that an enhancement had been filed..

14.   On or about June 6, 2002, when White first consulted with movant, movant advised White that he had an alibi in that he was in Chihuahua, Mexico at the time that Ms. Tammy Nielson, was arrested at the border crossing between Mexico and the United States.  Movant further advised White that he had received two citations from the police in Chihuahua, Mexico and that the citations were readily available in that they were in his desk at his home.

16.   White acknowledged that the citations could be vital to his defense.

17.   On or about June 14,  son of movant, Jose Carlos Arras, III, called White to discuss his fathers case with White.  Movant had previously given White permission to discuss his case with his son. Despite the telephone conversation, White never advised Jose Carlos Arras, III, that a plea offer had been tendered which would dramatically reduce the sentencing exposure that his father was facing.

 18.   Approximately one week later, Arras, III and White discussed the existence of two citations that were issued to movant, in Chihuahua, Mexico,  at the time Tammy Nielson was arrested  at the border for importing marijuana.

19. White and Arras, III, had numerous telephone conversations during which they discussed movant's case, including discussions regarding the two citations and how they would assist movant in his defense.

20. White never hired an investigator to obtain the citations, consequently he never attempted to have the citations authenticated pursuant to rule 902(3) of the Rules of Evidence.

21. Approximately one week before the trial of movant, White called Arras,,III, and asked him to go to Chihuahua, Mexico to retrieve the citations. Recognizing how vital the citations were to his fathers defense, Arras, III, drove to Chihuahua, and retrieved the citations.

22. On August 11, 2002, Arras, III, and White met at a bar located between Deming, N.M. and Las Cruces, where Arras,,III, gave the citations to White.

23. The citations were vital to the defense of movant, in view of the testimony of Nielson, where she testified that she met with movant at the Comfort Inn, in El Paso, Texas, the night before she was arrested. Trial Transcript (Tr) 8/14/02 at 98 . She further testified that on the day of her arrest, movant drove by while she was undergoing inspection and waved at her. Id. at 103.

24   Nielson testified that she met movant in Juarez, Mexico on the day she was arrested.

25. The citations were issued to movant on February 28, 2002 and on March 1, 2002. They would have further impeached the testimony of Nielson and would have provided an alibi for movant, since the citations show that the movant was actually in Chihuahua Mexico and not El Paso Texas and Cuidad Juarez, Mexico.

26. Nielson's testimony was crucial in obtaining the conviction of the movant, evidence of the citations issued to the movant would effectively impeached the testimony of Nielson, since

the citations would have raised reasonable doubt as to the Nielson alleged meeting with movant at the Comfort Inn, in El Paso, Texas, on February 28, 2002 and on the border on March 1, 2002.

27. The introduction of the citations would have bolstered the testimony of Detective Enrique Carrillo, who could not identify movant as the same individual he saw at the Comfort Inn, in El Paso, Texas, with Nielson on February 28, 2002.

28. Nielson, who transported marijuana across the border between the United States and Mexican admitted that she did not know how much weight was involved in any of the four loads she allegedly transported.

29. White failed to effectively impeach Nielson, despite being provided with impeaching evidence by movant.

29. Agent Shaw admitted that the total weight of the marijuana illegally transported into the United States was a little over 93 kilos.

30. White failed to notify movant that the Government had filed its information to enhance movant's sentence under 18 U.S.C. § 851, if convicted. (Doc. #71).

31. White failure to notify movant of the filing of the information to enhance his sentence weighed heavily into the decision of the defendant not to testify.

32. Had movant been made aware of the filing of the information to enhance his sentence he would have elected to testify.

33. Movant, who wanted to testify on his own behalf, did not testify when White advised him not to testify. The movant's waiver of his right to testify was not a knowing or intelligent waiver. By not testifying, the defendant's alibi defense nor testimony which would have effectively impeached Nielson, was not presented to the jury.

34. White failure to convince the jury that the total amount of marijuana transported into the United States fell below an objective standard of reasonableness and amounts to ineffective assistance of counsel.

33. White did not notify movant of the filing of the information to enhance movant's sentence until after the completion of the Presentence Report.

34. White's representation of movant fell below an objective standard of reasonableness.

## CONCLUSIONS OF LAW

1. Venue is properly laid in this Court

2.. Movant adopts and incorporates by reference paragraphs 1, 2 and 3 of the Governments Proposed Conclusions of Law.

3. An attorney's failure to discuss the ramifications of the impact of 18 U.S.C. § 851, with a defendant, is prejudicial, in that it denies the defendant effective assistance of counsel.

## FACTUAL CONCLUSIONS

1. The Court failed to determine individual findings for the amount of marijuana involved in the conspiracy.

2. Movant was never advised about a plea agreement and therefore could not knowingly and voluntarily reject it.

3. While Mr. Edwards advised the movant that an enhancement, if filed by the Government, would enhance his sentence, he was not advised as to how it would affect his sentence if he was convicted.

4. Movant was not advised that the Government would most likely file an information to enhance his sentence nor was he ever advised that an enhancement had been filed.

5. On or about June 6, 2002, White was aware of the existence of two foreign documents that would have provided both an alibi and impeachment evidence that could have been used to impeach Nielson.

6. White received the information regarding the two citations in a during a time period which would have been prior to the deadline to provide notice of an alibi defense.

7. Had the documents been properly authenticated they could have been used to provide the alibi defense and impeachment evidence.

8. White's failure to obtain the foreign documents( two citations) and to properly authenticate them in a timely fashion denied the movant of effective assistance of counsel.

9. Had White properly authenticated the foreign documents, it would established their authenticity and genuineness and that they pertained to the movant, in that they were issued to movant on February 28, 2002 and March 1, 2002..

10. Movant's decision not to testify was influenced by the failure of White to adequately advise movant of the filing of the information to enhance movant's sentence under 18 U.S.C. § 851.

11. Movant's decision not to testify was not a knowing and intelligent waiver of his right to testify on is own behalf.

12. White was ineffective in not convincing the jury that the total amount of the marijuana was under 100 kilos.

13. The cumulative errors in the representation of movant by Anthony White, Esq., fell below an objective standard of performance pursuant to *Strickland v. Washington,* 466 U.S. 668

(1984). Movant received ineffective assistance of counsel and as a result should be granted a new trial.

                                                      TORRES and GARDE, P.C.

                                        By: /S/ *Electronically Filed*
                                            Armando Torres
                                            Attorney at Law
                                            300 Central S.W. Suite 1200
                                            Albuquerque, New Mexico 87102
                                            Telephone: (505) 242-0247

I hereby certify that a true copy
of the foregoing Motion was mailed to
opposing counsel of record this
November 13, 2006

By: */S/ Electronically Filed*
     Armando Torres