# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**JOSE CARLOS ARRAS,**

    **Movant,**

  vs.                                            NO. 04cv903 MCA/WDS
                                                          NO. 02cr598

**UNITED STATES OF AMERICA,**

    **Respondent**

## MAGISTRATE JUDGE'S PROPOSED
## FINDINGS AND RECOMMENDED DISPOSITION[1]

This is a Motion to Vacate, Set Aside, or Correct Sentence filed under 28 U.S.C. § 2255 by Jose Carlos Arras (Arras), an inmate of FCI-La Tuna, Anthony, Texas. Arras is represented by Armando Torres, Esq. Respondent filed a response in opposition to the motion. An evidentiary hearing was held on November 17, 2006. Both parties filed supplemental briefs, including proposed findings of law and facts. The United States Magistrate Judge, having considered the arguments of the parties, the record, relevant law, and being otherwise fully advised, recommends that the Motion be denied. The court makes the following findings and recommended disposition.

## CLAIMS

Arras claims that his sentence of 262 months imprisonment resulted from ineffective assistance of counsel before and during his trial

## PROCEDURAL HISTORY

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

Arras was arrested on March 28, 2002. Mr. Peter Edwards, Assistant Federal Public Defender, was appointed as counsel for Arras on March 29, 2002.  The Grand Jury returned a two-count Indictment against Arras, alleging conspiracy to import less than 50 kilograms of marijuana and conspiracy to possess with intent to distribute the same, with a statutory period of imprisonment of not more than five years for each count.

Arras had been previously convicted of two drug smuggling offenses: one in the State of Tennessee, and another in the U.S. District Court for the Western District of Texas. Arras was on supervised release for the federal case at the time of his arrest in this case. These convictions qualified Arras as a career offender (see U.S.S.G. § 4B1.1(a)), and permitted the United States to seek to enhance a conviction at its discretion pursuant to 18 U.S.C. § 851.  If the United States chose to file the enhancement, Arras would face a  maximum statutory period of imprisonment of not more than ten years.

On May 20, 2002, Edwards moved to withdraw as counsel.  The motion for Edwards to withdraw as counsel was granted on May 21, 2006.  On May 28, 2002, Mr. Anthony White, Esq., was appointed as counsel for Arras.  On June 19, 2002, the Grand Jury returned a Superceding indictment. The new indictment alleged the same two counts as the previous indictment but it increased the quantity to 100 kilograms or more of marijuana, which changed the penalty sub-section. As a result of the Superceding indictment, Arras faced a statutory period of imprisonment of five-to-forty years without the § 851 enhancement, and ten-to-life if the Government filed for enhancement under § 851.

On August 13, 2002, a jury was impaneled for trial and the United States timely filed its enhancing information under 8 U.S.C. § 851.  On August 16, 2006, the jury found Arras guilty of

conspiring to import 100 kilograms or more of marijuana as charged in Count I of the superceding indictment, and of conspiring to possess with the intent to distribute 100 kilograms or more of marijuana as charged in Count II of the indictment.

On August 23, 2002, Arras filed a motion for a new trial with the District Court, which was denied. Arras was sentenced on November 4, 2002, as to both Count 1 and 2 to 262 months in the custody of the U.S. Bureau of Prisons to run concurrently, eight years of supervised release, and a $200 Special Penalty Assessment.

A final judgement as to Arras was entered on December 6, 2002. A Notice of Appeal was filed with the U.S. Court of Appeals for the Tenth Circuit by Arras on December 10, 2002. The district court's decision was affirmed by the Court of Appeals on July 16, 2004 in *United States v. Arras*, 373 F.3d 1071 (10th Cir. 2004). A writ of certiorari was not sought.

## FACTS

Peter Edwards has been a member of the State Bar since 1997, he specializes in criminal defense, and he has served as counsel for hundreds of defendants. Edwards met with Arras five times from April 1, 2002 to May 20, 2002. During that period, Edwards reviewed the case discovery, the elements of the offense, his criminal record, potential defenses and trial strategies, and likelihood of success. The Government did not offer a plea agreement to Arras during the pendency of Edward's representation.

Edwards reviewed Arras' criminal history with him and its possible significance, the timing as to when the United States might seek to file an information to enhance Arras' offense under 18 U.S.C. § 851, and the impact such an information would have on subsequent plea negotiations or later sentencing. Arras was adamant that he was innocent and that he wanted to go to trial. A

conflict quickly arose between Edwards and Arras because Arras believed that Edwards was too insistent on working out a plea bargain. Edwards moved to withdraw from the case because the attorney client relationship had deteriorated to a point where a conflict of interest had developed between them, specifically because counsel was discussing plea opportunities to a greater extent than Arras desired.

Anthony White has been a member of the State Bar since 1984, he specializes in criminal defense, and he has served as defense counsel in approximately 1,000 criminal cases. White spoke with Edwards in late-May 2002 to discuss the status of the case and prior counsel's assessment of the Government's proof against Arras. Edwards told White via telephone and in person several times that Arras had two previous drug-related convictions that would make him a career offender under the sentencing guidelines and thereby increase his criminal history, and that his statutory sentence was subject to enhancement pursuant to 18 U.S.C. § 851. Edwards also told White that his relationship with Arras had soured because Arras believed that he (Edwards) was focusing too much on advocating a plea agreement, rather than preparing to try the case.

Edwards provided White with the discovery he had received from the Government. On or about June 6, 2002, White first consulted with Arras (i.e., twelve days before the Superceding indictment was returned). Arras told White that he wanted to go to trial. Arras told White that he had gotten angry with Edwards because Edwards was pressuring him to plead guilty, rather than preparing to take the case to trial.

In addition to the discovery provided by Edwards, White received a substantial amount of information obtained by an investigator acting on behalf of Arras' co-defendant. The investigator's activities included a trip to Colorado to obtain information on an alleged co-conspirator, Tammy

Nielsen, who was cooperating with the Government. White believed that the evidence in the case favored the Government, and he told Arras that.

White accompanied Arras to the arraignment on the superceding indictment. White discussed the significance of the superceding indictment with Arras, briefly in court and in more detail at the jail after the arraignment. White told Arras that the superceding indictment increased the amount of drugs involved in the conspiracy from less than 50 kilograms to 100 kilograms or more, and that with his previous drug convictions and likely § 851 enhancement he was looking at ten years to life, with a very high criminal history category. Mr. White did not remember mentioning a particular amount of time in terms of years or months. Specifically, Mr. White did not tell Mr. Arras that he would be facing a sentence of 262 months at the low end of the sentencing guideline range if found guilty.

Following the superceding indictment, the United States offered a plea agreement to Arras and his co-defendant, in which it proposed that Arras plead guilty to Count 2 of the Superceding indictment, and in exchange the United States would agree to:

a. a three-level reduction for acceptance of responsibility;

b. not file an information enhancing Arras with either prior conviction under 18 U.S.C. § 851.

c. dismiss Count 1 at sentencing.

The plea agreement, however, was contingent on both defendants accepting the offer. White spoke to the defense attorney representing Arras' co-defendant. White was advised by that attorney that Arras' co-defendant had no intention of pleading guilty. The co-defendant subsequently went to trial along with Arras.

White told Arras that there was a plea offer but Arras did not wish to discuss it. In an effort

to preserve the attorney client relationship, White did not push the issue and did not tell Arras the specifics of the offer.

When White advised Arras what the Government's witness might say, Arras first mentioned that he might have some documents that would serve as either an alibi or as impeachment of the government's witness's expected testimony. The documents mentioned by Arras were two citations issued to him in Chihuahua City, Mexico. One citation was issued on February 28, 2002. The second was a traffic citation issued at 12:10 p.m. on March 1, 2002. One of the documents appeared to have been signed by Arras.

Arras advised White that his son had the documents and that he would provide White with them. White and Arras had several discussions about the documents, particularly with regard to when they would arrive from Mexico. On the afternoon of August 11, 2002, a Sunday, White met with Arras' son and received the two citations from him. White provided copies of the documents to the United States on August 12, 2002.

On August 13, 2002, during jury selection, the United States filed its information to enhance defendant's sentence under 18 U.S.C. § 851. White did not call Arras' attention to the filing of the enhancement, or have any further discussion about the significance of the enhancement until after the trial had concluded.

Trial began on August 14, 2002, and concluded the next day with both defendants found guilty. The two foreign citations proffered by Arras were not introduced into evidence at trial or used for impeachment. Arras filed a motion for a new trial on August 23, 2002. He alleged that his trial counsel was ineffective because he failed to attempt to authenticate and introduce into evidence two Mexican citations which, he argued, could have been used to impeach Nielsen. He also argued that

the amount of drugs attributed to him was based on insufficient evidence.  The District Court denied Arras' motion for a new trial.  The District Court held that "defense counsel performed effectively and that the new evidence, if it had been considered by the jury, would not have changed the outcome of the case."  The Court also found the evidence was sufficient for a reasonable jury to infer that Arras conspired to import and to possess with the intent to distribute the quantity of marijuana alleged in the indictment.

The facts set forth above are found by the Court after review of the record and after consideration of the testimony of the witnesses at the evidentiary hearing held on November 16, 2006.  The Court notes that it found the testimony of the movant, Jose Carlos Arras, largely lacking in credibility.  Specifically, Arras testified that he was told by Peter Edwards at their first meeting that he had a "perfect trial case."  Edwards was not asked specifically during the evidentiary hearing whether he had told Arras that he had a "perfect trial case" during their first meeting.  However, Edwards did not receive discovery from the Government until shortly before he filed his motion to be removed as counsel.  Arras admitted that his dissatisfaction with Edwards resulted from Edwards being too insistent on arranging a plea bargain, which is inconsistent with the behavior of an attorney who believes he has a "perfect" case.  White also confirmed that Arras spoke of Edwards angrily, because Edwards had been too focused on arranging a plea.

Arras also testified emphatically that he had had no idea that White had received a plea bargain offer until he first became aware of the fact while reviewing the Government's Proposed Findings of Fact and Law two weeks before the November 17, 2006 evidentiary hearing.  He testified that until that moment he was unaware that any plea offer had been made in the underlying criminal case. However, in Arras' *pro se* Motion to Vacate, Set Aside, or Correct Sentence, Pursuant to 28

7

U.S.C. § 2255, and supplement thereto, one of the errors alleged by Arras was that White failed to tell him about the plea bargain offer prior to trial.

Third, Arras denied that he was told by White before trial that a plea agreement had been offered. This testimony seems disingenuous at best, in view of the fact that Arras fired his first lawyer because the lawyer wanted to discuss the possibility of a plea. The Court finds credible the testimony of Anthony White that he advised Arras of the offer, if not the details of the offer, and that Arras discussed with him the fact that he was upset with his first attorney because that attorney was too focused on arranging a plea. Moreover, the Court notes that Arras had two earlier convictions, and was not a novice in the criminal justice system.

Next, there was a substantial difference in the testimony of White and Arras over who was responsible for retrieving the two citations from Arras' home in Chihuahua. White testified that Arras kept promising that he would deliver the documents to White. Arras testified that White told him that either he or his secretary would travel to Chihuahua and retrieve the documents from Arras' house. Arras admitted that he spoke to his son about four times a week during this period, and acknowledged that he would have had to contact his wife and let her know when White was arriving so she could let White into the house. Arras' son testified that White asked him to get the documents shortly before the trial date. Arras testified that he told his son to get them, after weeks had passed and White had not obtained the documents. The Court found White's testimony more credible on this subject.

Finally, Arras contends that Edwards told him his sentencing exposure was in the range of four to six years, and that he was never told differently by White. Arras also claims that White never mentioned a sentence enhancement. Yet, White and Arras were present at Arras' arraignment for the

8

superceding indictment. The primary effect of the superceding indictment was to change the statutory term of imprisonment. Before the superceding indictment, Arras faced not more than five years imprisonment on each count, which would increase to not more than ten years imprisonment if the Government filed a § 851 enhancement. After his arraignment on the superceding indictment, Arras faced five-to-40 years without an enhancement, and 10 years-to- life imprisonment with a § 851 enhancement. White testified that he spoke briefly with Arras in court during arraignment, and in greater depth afterwards at the jail. White admitted that he had not gone into detail about sentencing specifics pursuant to the guidelines. However, the Court finds it credible that White, who had extensive past experience dealing with the code sections under which Arras was indicted, would have told Arras of the change in sentencing exposure since that was the primary, if not sole, consequence of the superceding indictment. It is on this basis that the Court concludes that Arras was aware that his sentencing exposure, following the likely filing of an enhancement, and in view of his criminal history, was significantly greater than the ten year minimum contained in the statute, rather than the four to six years that he claimed at the evidentiary hearing.

## STANDARD OF REVIEW

Since Arras is in federal custody pursuant to the judgment of a federal court, 28 U.S.C. §2255 applies. A district court may grant relief under § 2255 only if it determines that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. Petitioner's claim of ineffective assistance of counsel, if proved, would constitute a denial or infringement of his constitutional rights.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The merits of an ineffective counsel claim are squarely governed by *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). In *Strickland*, 466 U.S. at 686-87, the Supreme Court devised a two-step inquiry to determine whether a lawyer's poor performance deprived an accused of his Sixth Amendment right to assistance of counsel. In order to establish an ineffective assistance claim, the petitioner must show (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced [his] defense." *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999), cert. denied, 529 U.S. 1027 (2000). To establish deficient performance, Arras must show that his attorney made "errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment," *Williams v. Taylor*, 529 U.S. 362, 390, 146 L. Ed. 2d 389, 120 S. Ct. 1495 (2000), quoting *Strickland*, 466 U.S. at 687; and that his legal "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. To establish prejudice, Arras "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

The prejudice component focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Williams*, 529 U.S. at 393, FN17, citing *Strickland* 466 U.S. at 687, and *Kimmelman v. Morrison*, 477 U.S. 365, 374, 393, 91 L. Ed. 2d 305, 106 S. Ct. 2574 (1986); see also *Lockhart v. Fretwell*, 506 U.S. 364, 369, 122 L. Ed. 2d 180, 113 S. Ct. 838 (1993). It is entirely appropriate for a habeas court to analyze the prejudice prong first and exclusively, if that is the easier course. *E.g. Scoggin v. Kaiser*, 186 F.3d 1203, 1207 (10th Cir. 1999).

**1. White's Purported Failure to Advise of Sentencing Exposure And Availability of Plea Bargain**

A defendant is entitled to the effective assistance of counsel in determining how to plead. *United States v. Carr*, 80 F.3d 413 (10th Cir., 1996). A plea may be involuntary if the attorney materially misinforms the defendant of the consequences of the plea. *United States v. Rhodes*, 913 F.2d 839, 843 (10th Cir. 1990) A defendant's decision to plead must constitute a 'deliberate, intelligent choice between available alternatives. Id. While the vast majority of such cases appears to involve allegedly erroneous advice that results in a guilty plea, the Court discerns no substantive difference between such cases and one such as this, where a defendant alleges that his attorney's inadequate advice led him to go to trial, rather than accept a plea bargain.

In this matter, the defense attorney testified that he did not go into detail about Arras' sentence exposure or the offered plea bargain because he was concerned, based on the first defense attorney's experience, that Arras would get angry and accuse him of trying to force acceptance of a plea bargain. However, for a defendant to make a "deliberate, intelligent choice between available alternatives" it is necessary for him to be advised of those alternatives. White should have advised Arras of the details of the plea offer, or put the terms in writing if Arras refused to listen to him. Similarly, White should have gone further in terms of explaining Arras' sentence exposure than merely telling Arras that it would be upwards of ten years. The sentencing range under the guidelines was readily calculable, and Arras should have been advised of the presumptive range, again, whether he wanted to hear the information or not.

In *Strickland*, the Supreme Court stated that judicial scrutiny of defense counsel's performance should be "highly-deferential," avoid second-guessing, and begin with a "strong

presumption" that counsel's conduct fell within "the wide range of reasonable professional assistance." 466 U.S. at 689. Keeping in mind these standards, the Court concludes that Mr. White's failure to provide more specific advice regarding the range of defendant's possible sentence and his failure to provide a detailed description of the plea offer fell below an "objective standard of reasonableness."

Having found that Arras presented sufficient evidence of "deficient performance" under the first step of the *Strickland* analysis, the Court moves on to the second step. To establish prejudice, Arras "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. There is a split among the courts of appeal as to whether a defendant's post-conviction testimony that he would have accepted a plea offer is sufficient to show prejudice, or, conversely, whether the defendant must adduce objective evidence to that effect. The Seventh and Second Circuits have held that a defendant's post-conviction testimony that he would have accepted the plea is insufficient to establish prejudice. Instead, those courts have required the defendant to come forward with additional objective evidence to prove that the defendant would have accepted the plea offer. *Paters v. United States*, 159 F.3d 1043, 1047 (7th Cir. 1998); *United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998). The Sixth Circuit does not explicitly require the additional objective evidence, *Magana v. Hofbauer*, 263 F.3d 542, 547 n. 1 (6th Cir. 2001), although it has approved of a district court decision which concluded that the defendant had offered sufficient objective evidence. *Turner v. Tennessee*, 858 F.2d 1201, 1207 (6th Cir. 1988), vacated on other grounds, 492 U.S. 902 (1989).

The Tenth Circuit, in an unpublished decision, cited the Sixth Circuit in holding that to prove prejudice in the context of a case like this, a defendant "must establish that there is a reasonable probability that, but for the incompetence of counsel, he would have accepted the . . . offer and pled

12

guilty." *Bachicha v. Shanks*, 66 F.3d 338 (10th Cir. 1995) (quoting *Turner v. Tennessee*, 858 F.2d at 1206). The court further held that a defendant's own self-serving testimony alone is insufficient to demonstrate a reasonable probability. Id. The defendant must produce objective evidence that he would have accepted the plea. Id. Thus, the test by which prejudice must be measured is whether defendant has established by objective evidence that there is a reasonable probability that, but for the incompetence of counsel, he would have accepted the plea offer and pled guilty.

The Court concludes that there has not been a sufficient showing of prejudice in this case to justify the granting of relief under § 2255. First, the proffered plea bargain was contingent on both defendants accepting it, and the uncontradicted testimony of Anthony White was that Arras' co-defendant was unwilling to accept the offer. Second, Arras offered no objective evidence, other than his own self-serving testimony, to demonstrate a reasonable probability that he would have accepted the proffered plea offer. To the contrary, Arras reiterated at the evidentiary hearing that he was innocent of the charges, which bolstered the testimony of both defense attorneys that he was focused on going to trial. Third, it is undisputed that even a hypothetical discussion of negotiating a plea bargain was sufficient to ruin the relationship Arras had with Edwards, such that it became necessary for Edwards to file a motion to be relieved as counsel. Accordingly, the Court concludes that Arras' claim of ineffective assistance of counsel relating to his decision to go to trial rather than accept a plea bargain is not well taken and his petition should be denied on that ground.

**2. White's Failure to Introduce the Mexican Citations**

Arras alleges that White was ineffective for failing to introduce the two Mexican municipal citations at trial. Tammy Nielsen testified that the evening before she was arrested she met with Arras in Juarez, Mexico. She testified that she saw Arras the following day, shortly after driving from

13

Juarez through the border check point. Nielsen was arrested on March 1, 2002. Accepting the citations at face value, they would have been evidence of the fact that Arras received a ticket in Chihuahua, Mexico for illegal wood cutting on February 28, and for a traffic violation in Chihuahua on March 1, when, according to Nielsen, he was allegedly in Juarez. Chihuahua is several hundred miles from Juarez.

The Court notes, however, that there was evidence that a vehicle registered to Arras passed through the Juarez border check point several minutes after Ms. Nielsen drove through on March 1, 2002. Furthermore, the Government introduced voluminous telephone records showing dozens of calls between Ms. Nielsen, Arras and his co-defendant at and around the time of her four trips to Mexico from Colorado. While evidence that Arras was in Chihuahua on February 28 and March 1, 2002 would have called into question Nielsen's credibility, Arras' presence in Juarez on either date was not required for him to be found guilty of the two charges.

As noted above, the Court does not find credible Arras' story that he waited months for White to drive to Chihuahua and have Arras' wife show him the tickets in Arras' home office. Arras spoke several times per week with his son, and could easily have made arrangements to have the tickets brought to the United States, as he eventually did. However, when White finally did receive this evidence, it was on the eve of trial and there was no time to obtain the foreign witnesses necessary to authenticate the documents. An attorney's failure to investigate cannot be charged as a claim of ineffective assistance of counsel when the essential and foundational information required to trigger such an investigation is withheld from the defendant's attorney by the defendant himself. *United States v. King*, 936 F.2d 477, 480 (10th Cir.1991) And, while White could have had Arras take the stand to introduce the documents and testify about the facts surrounding the issuing of the citations,

14

that would have exposed Arras to cross-examination about his two previous drug trafficking convictions. Strategic or tactical decisions on the part of counsel, such as whether to advise a defendant to testify, or not testify, in his own defense, are presumed correct, *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, unless they were "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy," *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir.2000). The Court is of the opinion that any advantage to be gained by having Arras take the stand and discuss the tickets would have been more than offset by the admission of evidence of his prior convictions for drug offenses.

Finally, while introduction of the citations might have raised some question regarding Tammy Nielsen's credibility, the Court does not place as much weight on their impact as it appears Arras did. Notably, Arras offered no explanation of the voluminous telephone records documenting calls to and from Arras, Nielsen, and Ruiz. It was not necessary for Arras to have been in Juarez on February 28 and March 1, 2002 for him to be guilty of the crimes charged. The Court finds that Arras has not carried his burden of proving that his counsel was ineffective for failing to introduce the documents in question, nor has he shown that he was prejudiced by the failure to introduce the documents at trial. Accordingly, the Court concludes that Arras' claim of ineffective assistance of counsel relating to the failure to introduce the Mexican citations at trial is not well taken and his petition should be denied on that ground.

**3. White's Purported Failure to Challenge Witness Testimony or Provide Defense at Trial**

Arras alleges that White's cross examination of the government's witnesses, Tammy Nielsen and Agent Shaw, was ineffective. The Court has reviewed the trial transcript and concludes that White's cross examination of those witnesses was not "deficient" per *Strickland*. Accordingly, the

Court concludes that Arras' claim of ineffective assistance of counsel relating to his attorney's failure to challenge witness testimony or provide a defense at trial is not well taken and his petition should be denied on that ground.

**4. Allegations That Sentence Violated *Blakely v. Washington***

Arras alleges that the jury failed to make particular findings of fact regarding the amount of drugs involved in the conspiracy, per *Blakely v. Washington*. To the contrary, the jury specifically found that more than 100 kg of marijuana was involved in the conspiracy. The judge made no factual findings that would have been in violation of the holding of *Blakely v. Washington*. Accordingly, the Court concludes that Arras' claim that he was sentenced in violation of *Blakely v. Washington* is not well taken and his petition should be denied on that ground.

## RECOMMENDED DISPOSITION

The court recommends that Arras' Motion Pursuant to 28 U. S. C. §2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody be DISMISSED.

**W. DANIEL SCHNEIDER**
**United States Magistrate Judge**